UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| LISA COLOMBE, VESTA CARLSON and KAKTIS CARLSON, | **4:24-CV-5069-LLP** |
| Plaintiffs, | |
| vs. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION TO DEFER** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Pending before the Court is a Motion to Dismiss (Doc. 7) filed by Defendant United States of America and Plaintiffs' Motion to Defer Ruling on the Motion to Dismiss (Doc. 18) to allow discovery. For the following reasons, Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of jurisdiction is denied and its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim is denied without prejudice. Plaintiffs' Motion to Defer Ruling is denied as moot.

## I.    Facts

The following is a recitation of facts alleged by Plaintiffs in their Complaint that are relevant to the pending Motion to Dismiss.

### A. The Incident

On or about September 3, 2019, Plaintiff Lisa Colombe took a teaching job at the St. Francis Indian School ("the School") as a science teacher. (Doc. 1, ¶ 8). Lisa Colombe signed a teacher contract with the school. (Doc. 1, ¶ 8). As a result of that teaching contract, Lisa Colombe and her family including Plaintiff Vesta Carlson and Plaintiff Kaktis Carlson, the natural children of Plaintiff Lisa Colombe, moved into the School's teacher housing campus, in house #43 on

1

Warrior Drive which had live security which was supposed to reasonably/regularly patrol, protect and to keep/assure/maintain the premises and the safety of the residents. (Doc. 1, ¶ 8).

In December 2019, during the Lakota Nation Invitational basketball tournament in Rapid City, while Plaintiff Lisa Colombe was in Rapid City with students, Plaintiffs' house on the school campus was broken into. (Doc. 1, ¶ 10). Plaintiffs' Christmas presents, money, and clothes were stolen from Plaintiffs' family house in house #43. (Doc. 1, ¶ 10). Plaintiffs immediately notified the police and the Teacher School Housing Maintenance Department. (Doc. 1, ¶ 10). After Plaintiffs returned to their home and reported the break-in, nothing was done. (Doc. 1, ¶ 11). Plaintiffs later learned that the security guard (a school official) on duty, was intoxicated on the night of the break-in, and passed out somewhere, which he was known to regularly do. (Doc. 1, ¶ 11).

Plaintiff Lisa Colombe was advised by her hired hand that he had previously caught two (2) assailants attempting to break into her home on the school campus at 8:00 a.m. on December 16, 2019. (Doc. 1, ¶ 12). Plaintiff immediately contacted the Rosebud Sioux Tribe police department and filed a police report. (Doc. 1, ¶ 12). Little was done by the police to investigate the crime or to seek out and arrest anyone. (Doc. 1, ¶ 12).

In January 2020, Plaintiffs' home was broken into again. (Doc. 1, ¶ 13). Plaintiffs put a request into School maintenance to have the windows fixed, because even though the windows would lock, they could still be shimmied open with little or no effort. (Doc. 1, ¶ 13). That request fell flat (was ignored) and nothing was done to fix, repair, secure or make safe the premises. (Doc. 1, ¶ 13).

On July 19, 2020, after Plaintiff Lisa Colombe went to bed late in the family home, Plaintiff Lisa Colombe's son, Plaintiff Kaktis Carlson, was physically chased and burst into Plaintiff Lisa Colombe's bedroom, screaming, with blood all over his face saying someone was in the house and had stabbed Plaintiff Kaktis Carlson in the right eye with a steak knife. (Doc. 1, ¶ 14). Plaintiff Kaktis Carlson's eyelid was split in half and the knife had hit Plaintiff Kaktis Carlson's eye plate which caused an orbital blow-out. (Doc. 1, ¶ 15). Plaintiff Kaktis Carlson also had multiple stab wounds to his face and head by the unknown male assailant. (Doc. 1, ¶ 15). Plaintiff Lisa Colombe immediately went outside to make sure the suspected assailant(s) were no longer there,

and noticed that two (2) exterior windows were opened, both of which were the broken and compromised windows from the earlier break-ins. (Doc. 1, ¶ 16).

Plaintiff Lisa Colombe reported the incident to the School. (Doc. 1, ¶ 18).

**B. Administrative Claims**

Plaintiffs served their initial Federal Tort Claims Act ("FTCA") administrative claims on or about April 21, 2022, upon the appropriate federal authorities/agencies. (Doc. 1, ¶ 6). Plaintiff Lisa Colombe, mother of Plaintiff Kaktis Carlson, a minor, signed a SF 95 form on April 18, 2022, on Kaktis's behalf. (Doc. 1-1 at 25). Therein, Plaintiff detailed a sum certain for injury to person and property and attached a summary detailing the incident from which the injuries arose. In box 2. of the SF 95 form requesting the "Name, address of claimant, and claimant's personal representative if any," Plaintiff designated Kaktis Carlson as the Claimant and "Robin L. Zephier, PO Box 9460, Rapid City, SD 57709" as the Representative. (Doc. 1-1 at 25). Plaintiffs Lisa Colombe and Vesta Carlson also signed separate SF 95 forms on their own behalf. (Doc. 1-1 at 18, 32).

Accompanying Plaintiffs' SF 95 forms were four (4) separate letters dated April 21, 2022, on firm letterhead ("Zephier & LaFleur, P.C."), signed by Robin L. Zephier, PO Box 9460 Rapid City SD 57709-9460 on behalf of Lisa Colombe, Vesta Carlson, and Kaktis Carlson, and sent by certified mail. (Docs. 1-1 at 14-17). The subject line of the letters reads "Re: Federal Tort Claims for Lisa Colombe, Vesta Carlson and Kaktis Carlson." (Doc. 1-1 at 16). The letters states as follows:

> Enclosed, please find the Federal Tort Claims of Lisa Colombe, Vesta Carlson and Kaktis Carlson. I am also enclosing a copy of my representation agreement.
>
> If you have any questions, please feel free to give me a call. Thank you for your immediate attention to these matters.

(Doc. 1-1 at 16). Accompanying Plaintiffs' SF 95 forms were the representation agreements dated February 1, 2022, between Mr. Zephier and each of the Plaintiffs—Lisa Colombe, Vesta Carlson and Kaktis Carlson. (Doc. 1-2 at 58-63).

By letter dated September 6, 2022, to Robin L. Zephier, Esq., the Government stated that "you submitted a Standard Form 95, dated April 18, 2022, on behalf of Vesta Carlson" and

requested further information regarding the claim arising from the failure of Vesta Carlson to obtain a scholarship. (Doc. 1-3 at 74). By letters dated March 27, 2023, Mr. Zephier received notification that that each of his client's—Lisa Colombe, Kaktis Carlson, and Vesta Carlson—administrative claims had been denied because "[a]fter a complete review of the claim file, we cannot determine the United States is liable under the FTCA or South Dakota law." (Doc. 1-3 at 76-81).

Mr. Zephier filed reconsiderations of the FTCA claims on behalf of Lisa Colombe, Vesta Carlson, and Kaktis Carlson on September 13, 2023. (Doc. 1-2 at 45-51). By letters dated March 4, 2024, Mr. Zephier was informed that the reconsideration requests for his clients had been denied. (Docs. 1-3 at 64-69).

### C. Federal Lawsuit

On September 3, 2024, Plaintiffs filed a Complaint under the Federal Tort Claims Act against Defendant United States of America. (Doc. 1). In Count One, Plaintiffs alleged a cause of action for negligence. (Doc. 1). Specifically, Plaintiffs allege that:

> Plaintiffs have a good faith belief that the School and its employees and officials had actual/implied/constructive and reasonable notice of the previous break-ins and inherent dangers to employees living in the St. Francis Indian School Campus Housing, and especially in the House #43. St. Francis Indian School's negligence includes a failure to reasonably hire, screen, supervise and/or to adequately train its maintenance or security staff. Defendant School and its administrators, security/maintenance staff failed to reasonably inspect and secure the broken into home, and to timely and adequately repair and secure the broken windows, doors and locks. Also, it appeared that the security staff was negligent in not responding, acting or protecting/safeguarding Claimants' house and property from said known dangers, including nearby assailants/drug dealers/criminals/dangerous suspects, after having repeated actual notice of the break-ins and the dangers inherent to the Plaintiffs' at House #43, because of the unrepaired and insecure condition of the house's windows and doors and locks.

(Doc. 1, ¶ 27). In Count Two, Plaintiffs Lisa Colombe and Vesta Carlson allege a cause of action for negligent infliction of emotional distress as bystanders with a familial relationship to Kaktis Carlson and witnesses to his injuries immediately following the attack. (Doc. 1).

The United States has moved to dismiss Plaintiff Katktis Carlson's negligence claims under Federal Rules of Civil Procedure 12(b) for lack of subject matter jurisdiction for failure to properly

present his administrative claim. (Doc. 8 at 93, 95). The United States has moved to dismiss the entire action under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 8 at 93). The United States argues that the St. Francis Indian School ("the School") was acting as a landlord and as such, under South Dakota law, owed no legal duty to Plaintiffs, the tenants, to protect them from the criminal acts of a third party. (Doc. 8 at 100).

Plaintiffs have moved to defer the Court's ruling on the Motion to Dismiss to allow the parties to conduct additional discovery regarding whether Defendant had a legal duty to exercise reasonable care to protect Plaintiffs from a foreseeable high risk of harm from crime.

## II.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

The United States has moved to dismiss Plaintiff Katktis Carlson's negligence claims under Federal Rules of Civil Procedure 12(b) for lack of subject matter jurisdiction for failure to properly present his administrative claim. (Doc. 8 at 93, 95).

### A. Legal Standard

In deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the Complaint, but may consider material outside of the pleadings in an effort to determine whether it has jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The Court must first distinguish between a facial attack and a factual attack. *Id.* at 720 n.6. For a facial attack, allegations in the Complaint are taken as true and disputed issues are construed and all reasonable inferences drawn in favor of the Complaint. To survive a factual attack on the Court's jurisdiction, the "[C]ourt is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 730. The Court is free to "consider matters outside the pleadings," and the Court "need not view the evidence in the light most favorable to the non-moving party." *Id.* at 729 n.6, 730.

In the present case, the parties do not dispute the jurisdictional facts and all the exhibits offered in support of jurisdiction are attached as exhibits to Plaintiffs' Complaint.

### B. Discussion

Plaintiffs filed a lawsuit in this Court against the United States of America under the Federal Torts Claims Act ("FTCA"). The FTCA waives the sovereign immunity of the United States, but only if a plaintiff satisfies the procedural requirements of 28 U.S.C. § 2675(a) by

presenting the claim to the proper federal agency. *Sleighter v. United States*, Civ. No. 5:24-5014-RAL, 2025 WL 238880, at *3 (D.S.D. Jan. 17, 2025) (citing *Mader v. United States*, C654 F.3d 794, 798 (8th Cir. 2011)). Specifically, section 2675(a) provides that FTCA actions "shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." *Id.* (quoting 28 U.S.C. § 2675(a)). The presentment requirement of § 2675(a) "is jurisdictional and must be pleaded and proven by the FTCA claimant." *Id.* (quoting *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993)). Failure to properly present a claim within "two years after such claim accrues" results in the claim being "forever barred." *Id.* (quoting 28 U.S.C. § 2401(b)).

Although the FTCA does not identify the exact information plaintiffs must provide to properly "present" their claim to a federal agency, the Attorney General has promulgated a regulation defining § 2675(a)'s presentment requirements. *Id.* (citing 28 C.F.R. § 14.2(a)). Section 14.2(a) states:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency received from a claimant, his duly authorized agent or legal representative, [1] an executed Standard form 95 or other written notification of an incident, [2] accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and [3] the title or legal capacity of the person signing, and is accompanied by the evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

Plaintiff Lisa Colombe signed the SF 95 on behalf of her minor child, Kaktis Carlson. The Government argues that Lisa Colombe failed to present evidence of her authority to act as an agent in presenting Kaktis's administrative claim. (Doc. 8 at 95). In opposition, Plaintiffs argue that they met the presentment requirements because Kaktis Carlson's SF 95 form was accompanied by a cover letter signed by Robin Zephier, on his firm's letterhead and reading "Enclosed, please find the Federal Tort Claims of Lisa Colombe, Vesta Carlson and Kaktis Carlson. I am also enclosing a copy of my representation agreement." Also accompanying Kaktis's SF 95 form was Mr. Zephier's fee and representation agreement executed by Lisa Colombe on behalf of her minor child, Kaktis Carlson.

6

"The Eighth Circuit has not given specific examples of what an attorney must do to prove their authority to file an administrative claim for a client." *Sleighter*, 2025 WL 238880, at * 4. In *Sleighter v. United States*, the district court looked at cases that have examined this issue and found that "[w]hat emerges from these cases is that an attorney must make some minimal showing that they are in fact acting as an attorney for the claimant." *Id.* at *5. The court reasoned that "[t]his minimal showing makes sense in consideration of the 'long-standing legal presumption that an attorney has authority to act on behalf of the person he or she represents.' " *Id.* (quoting *Burnett v. United States*, Civ. No. 05-1279, 2005 WL 8174688, at * (D. Md. Dec. 9, 2005). The court also noted that South Dakota law has "long presumed that an attorney appearing on behalf of a client is authorized to do so." *Id.* (citing *Anderson v. Hultman*, 80 N.W. 165, 166 (S.D. 1899)). In *Sleighter*, the court found that the plaintiff's attorney had made the necessary minimal showing of authority because he had mailed the plaintiff's FTCA claims to the proper governmental agency in an envelope designating his firm and "[t]he mailing contained two SF95s and a letter written and signed by [the attorney] on [firm letterhead]." *Id.* The court found that "the letter communicates that the signer of the letter was an attorney because his name was included in the letterhead," and noted again that under South Dakota law, there is a presumption that an attorney appearing on behalf of a client has the authority to do so. *Id.*

As in *Sleighter*, Mr. Zephier's mailing included the required SF 95 forms, a cover letter on firm letterhead indicating that he was submitting the FTCA claims on behalf of his clients Lisa Colombe, Vesta Carlson, and Kaktis Carlson, and additionally included his fee and retainer agreements with the three Plaintiff which were all executed prior to filing the administrative claims. The fact that Lisa Colombe, rather than Mr. Zephier, signed the SF 95 form on behalf of Kaktis Carlson does not render the presentation faulty. As indicated above, box 2. of Kaktis's SF 95 form requesting the "Name, address of claimant, and claimant's personal representative if any," designated "Robin L. Zephier, PO Box 9460, Rapid City, SD 57709, 605-342-0097" as the Representative. (Doc. 1-1 at 25). The cover letter accompanying Plaintiff's SF 95 forms, was written on the firm's letterhead and listed Mr. Zephier as a lawyer with the firm and contained contact information matching that indicated by Lisa Colombe in Box 2 of Kaktis's SF 95 form. Additionally, unlike in *Sleighter* where the plaintiff's claims were denied for failure to provide evidence of the attorney's authority to present claims on behalf of the plaintiff, the Government in this case continued to treat Plaintiffs' claims as having been properly presented. The Government's

7

directed all of its correspondence to Mr. Zephier throughout the administrative claims process and acknowledged throughout that he was the legal representative during this process for Kaktis Carlson, his sibling Vesta Carlson, and mom, Lisa Colombe. The Court concludes that based on the foregoing, Attorney Robin Zephier has made the minimal showing that he was in fact acting as the attorney for Kaktis Carlson and had authority to act on his behalf under South Dakota law.

### III.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

The United States has moved to dismiss the entire action under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 8 at 93). The United States argues that the St. Francis Indian School ("the School") was acting as a landlord and as such, under South Dakota law, owed no legal duty to Plaintiffs, the tenants, to protect them from the criminal acts of a third party. (Doc. 8 at 100).

#### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court assessing such a motion must accept all factual allegations in the complaint as true and draw all inferences in favor of the nonmovant. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010); *Brooks v. Midwest Heart Group*, 655 F.3d 796, 799 (8th Cir. 2011). Courts consider "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)).

#### B.  Discussion

The United States moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' complaint alleging negligence in failing to properly maintain and secure Plaintiff's housing unit on the School's teaching housing campus, and Lisa Colombe's and Vesta Carlson's claim for negligent infliction of emotional distress for having witnessed Kaktis's injuries. (Doc. 8 at 100). The United States argues that under South Dakota law, the School, as a landlord,

owed no duty to protect Plaintiffs, tenants on the School's teaching housing campus, from the criminal acts of a third party. (Doc. 8 at 100).

Generally, the law imposes no duty to prevent the misconduct of a third person. *Koenig v. London*, 968 N.W.2d 646, 653 (S.D. 2021). Some exceptions exist to this general rule. For example, a duty to protect a person from the unlawful acts of a third person could arise if the following two elements [a]re met: (1) the existence of a special relationship . . . and (2) a finding that the intentional criminal acts were foreseeable. *Koenig*, 968 N.W.2d at 653 (citing *Walther v. KPKA Meadowlands Ltd. P'ship*, 581 N.W.2d 527, 535 (S.D. 1998)). Section 302B Restatement (Second) of Torts (1965) provides that a duty to protect another from crime may also arise if "a person's affirmative acts or omissions create a foreseeable high risk of harm from" crime, which a reasonable person would take into account. *See Smith ex rel. Ross v. Lagow Const. & Developing Co.*, 642 N.W.2d 187, 191 (S.D. 2002) (citing *Restatement (Second) of Torts* § 302B (1965)); *Koenig*, 968 N.W.2d at 655 (citing *Restatement (Second) of Torts* § 302B (1965), cmt. e).

The parties acknowledge that generally, no special relationship exists between a landlord and tenant. *Lagow Construction*, 642 N.W.2d at 191; *Walther*, 581 N.W.2d at 535. Instead, Plaintiffs contend that the School ignored Lisa Colombe's request in January 2020 to repair the windows because they "could be shimmied open with little or no effort," and argue that this omission created a foreseeable high risk of harm from crime after Ms. Colombe's reports of previous break-ins. The Government argues in support of its Motion to Dismiss that the School had no duty to protect Plaintiffs from criminal acts of a third party because the criminal act in this case, a home invasion resulting in serious bodily injury, was not foreseeable.

Foreseeability in defining the boundaries of a duty is generally a question of law. *Lagow Construction*, 642 N.W.2d at 192; *Scott v. Dyno Nobel, Inc.*, 967 F.3d 741, 747-48 (8th Cir. 2020) ("We only conclude that a reasonable jury could find that the combination of circumstances created some probability of harm to Calumet workers sufficiently serious that ordinary persons would take precautions against it. Therefore, the question of foreseeability, as incorporated into the analysis of duty, was not appropriate for summary judgment."). "Most courts fix the limits of foreseeability by examining all the circumstances, including the landlord's knowledge of prior criminal incidents on the premises." *Lagow Construction*, 642 N.W.2d at 192; *Walther*, 581 N.W.2d at 536 ("We apply a totality of the circumstances test to determine foreseeability."). "[P]rior incidents must be

9

sufficiently numerous or of such significance and similarity that the landlord was on notice that there was a probable danger to the tenants." *Lagow Construction*, 642 N.W.2d at 192. "There must be knowledge of a danger, not merely possible, but probable." *Id.* "Defendants must have had notice of the probable increased risk of crime and the condition that increased that risk." *Id.* at 193. As the South Dakota Supreme Court has noted, "[i]n a majority of cases where a landlord was held liable for a criminal attack on a tenant, a known physical defect on the premises foreseeably increased the risk of th[e] attack." *Id.*

In their Complaint, Plaintiffs allege that prior to the July 2020 break-in during which Kaktis was assaulted, there were two break-ins at the home and one attempted break-in. (Doc. 1, ¶¶ 10, 12, 13). The first break-in occurred in December 2019 while Plaintiff Lisa Colombe with students in Rapid City at the Lakota Nation Invitational basketball tournament. (Doc. 1, ¶ 10). On that occasion, Plaintiffs' Christmas presents, money and clothes were stolen. Plaintiffs immediately notified the Teacher School Housing Department Maintenance of the incident. (Doc. 1, ¶ 10). Plaintiffs allege that they were advised by their hired hand that on December 16, 2019, he caught two assailants attempting to break into the home on the School Campus and that they immediately contacted the Rosebud Sioux Tribe police department and filed a police report. (Doc. 1, ¶ 12). Plaintiffs allege that in January 2020, their home was again broken into and they asked School maintenance to have the windows fixed because even locked, they could be shimmied open with little or no effort. (Doc. 1, ¶ 13). Plaintiff alleges nothing was done to fix or repair the windows. (Doc. 1, ¶ 13).

On July 19, 2020, Plaintiff Kaktis Carlson was attacked in the home by an unknown young male assailant. (Doc. 1, ¶¶ 14-15). Plaintiff Lisa Colombe immediately went outside to make sure the suspected assailant was no longer there and noticed that the windows the school neglected to fix had been opened. (Doc. 1, ¶ 16).

The Government contends that while Plaintiffs have alleged that they notified the School of the December 2019 break-in, Plaintiffs have not alleged that they notified the School of the January 2020 break-in, only that they put in a request to the School to have the windows fixed. (Doc. 23 at 295-96). The Government argues that knowledge of one prior break-in in December 2019 does not meet the "sufficient[ly[ numerous or of such significance and similarity" standard that would be required to find that the School was on notice that there was a probable danger to

Plaintiffs, its tenants. (Doc. 23 at 296). The Government argues that the December 2019 break-in "resulted in a petty theft, likely committed by individuals who knew the house would be unoccupied at the time, as Colombe and the students were attending a popular Native American basketball tournament in Rapid City." (Doc. 23 at 296). The Government argues that because the break-in was an isolated incident, it does not establish a broader pattern of criminal activity that would have alerted the [School] to a significant or recurring risk of criminal conduct at the teacher housing campus." (Doc. 23 at 296).

At the outset, the Court notes that the fact that one break-in resulted in petty theft while the other break-in resulted in aggravated assault does not mean that that Plaintiffs allegations fail to pass the "of such significance and similarity" test. In *Cain v. Vontz*, 703 F.2d 1279, 1283 (11th Cir. 1983) which the South Dakota Supreme Court cited in *Lagow Construction*, 642 N.W.2d 187 (S.D. 1987), a mother filed a lawsuit action against an apartment complex for the alleged wrongful death of her daughter. Under state law, a landlord may be liable for the criminal acts of a third party committed against a tenant if the landlord had reasonable grounds for apprehending that such criminal acts would be committed. 703 F.2d at 1282. The plaintiff had alleged that the landlord knew or should have known that there was a risk of criminal activity in the apartment complex, that there had been a break-in of the apartment of her daughter resulting in the destruction of locking devices on the door, that defendant had agreed to repair the door and replace the locks, but failed to do so, and that her daughter was shot and killed while asleep in the bed of her apartment. *Id.* at 1280.

The lower court stated that while it a break-in may have been foreseeable given the prior break-in and destruction of locking devices on the door, it was not foreseeable that the tenant would have been murdered in her apartment. *See id.* at 1282 (stating that if the criminal act committed against the tenant had been a burglary, the case would have gone to the jury). On appeal, the Eleventh Circuit disagreed, reasoning that "liability does not depend upon anticipating the particular injury. . . ." *Id.* at 1283. The Court stated that "[i]t is enough that by ordinary prudence the defendant could have foreseen that some injury or injurious consequences might have been anticipated from the act." *Id.*; *see also Aaron v. Havens*, 758 S.W.2d 446, 447-48 (Mo. 1988) (citing *Restatement (Second) of Torts* § 281, comment j (1965) ("It is not necessary to allege that past crimes involving entry into unauthorized places are of the same general nature as the one

11

which gave rise to the claim. If a burglar may enter, so may a rapist. To find a duty only the incidence of harm, not necessarily the quantum, need be foreseeable.").

That being said, the Court is unable to decide the foreseeability issue based on the allegations in the Complaint. The Court finds that in this case, determination of this issue is more appropriate at the summary judgment stage after the parties have conducted discovery, particularly regarding what notice the School had of previous break-ins and the method of entry into the home during these previous break-ins. *See Wendt v. Charter Commc'ns, LLC*, Civ. No. 13-1308, 2013 WL 12221823, at *1 (D. Minn. Sept. 4, 2013) (denying a motion to dismiss because "foreseeability presents and evidentiary burden, not a pleading one"); *Rhodus v. G4S Secure Solutions (USA), Inc.*, Civ. No. 4:22-0696, 2022 WL 16635128, at *2 (E.D. Mo. Nov. 2, 2022) ("Foreseeability for purposes of establishing whether a defendant's conduct created a duty to a plaintiff depends upon whether the defendant should have foreseen a risk in a given set of circumstances. It is not for the Court to determine on a motion to dismiss—as opposed to a motion for summary judgment— whether this is such a circumstance."); *c.f. Scott v. Dyno Nobel, Inc.*, 967 F.3d 741, 747-48 (8th Cir. 2020) ("We only conclude that a reasonable jury could find that the combination of circumstances created some probability of harm to Calumet workers sufficiently serious that ordinary persons would take precautions against it. Therefore, the question of foreseeability, as incorporated into the analysis of duty, was not appropriate for summary judgment."). At this stage, the Court finds that Plaintiffs have pleaded enough facts to make a plausible showing that Defendant's omissions created a foreseeable high risk to Plaintiffs of harm from crime.

Accordingly, it is hereby ORDERED that:

1. Plaintiffs' Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction (Doc. 7) is DENIED. The Court finds that Plaintiff Kaktis Carlson exhausted his administrative remedies and will be allowed to proceed on his claim of negligence;

2. Plaintiffs' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim (Doc. 7) is DENIED without prejudice to Defendant's right to bring a motion for summary judgment after discovery has been conducted; and

3. Plaintiffs' Motion to Defer Ruling on the Motion to Dismiss (Doc. 18) is DENIED as moot.

Dated this 29th day of July, 2025.

BY THE COURT:

Lawrence L. Piersol
United States District Judge